NOTICE
Decision filed 07/22/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 231224-U

NO. 5-23-1224

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 15-CF-1128 |
| | ) | |
| KEVIN KELLEY, | ) | Honorable |
| | ) | Jason M. Bohm, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justice Sholar concurred in the judgment.[*]

**ORDER**

¶ 1   *Held*:   We affirm the trial court's second-stage dismissal of the defendant's postconviction claim where trial counsel did not render ineffective assistance for failure to call a witness where the proposed testimony would have been cumulative.

¶ 2   This appeal stems from the second-stage dismissal and third-stage denial of the defendant's claims set forth in the defendant's postconviction petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). On September 22, 2023, the trial court dismissed all but one of the defendant's claims at the second stage. After an evidentiary hearing on November 30, 2023, the trial court denied the defendant's remaining claim. The defendant now

_____

[*]Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

1

appeals the dismissal of one of the claims in the postconviction petition. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                  I. BACKGROUND

¶ 4      On July 29, 2015, the defendant was charged in Champaign County with two counts of first degree murder in violation of section 9-1(a)(1) of the Criminal Code of 1961 (Code) (720 ILCS 5/9-1(a)(1) (West 2012)) and one count of first degree murder in violation of section 9-1(a)(2) of the Code (*id.* § 9-1(a)(2)). The defendant was arrested, counsel was appointed on August 6, 2015, and a jury trial was held on April 25 through May 2, 2016.

¶ 5      Because the underlying facts and the evidence presented at trial were set forth in the previous decision of this court, we will only address the evidence relevant to the current appeal. *People v. Kelley*, 2019 IL App (4th) 160598. On August 29, 2013, human remains were found on the bank of the Sangamon River. Dental records confirmed that the victim was Kelsie Blackford, a woman whom the defendant was known to spend time with on occasion. A forensic anthropologist testified at trial that Blackford's remains bore evidence that someone had attempted to dismember her body around the time of her death.

¶ 6      The defendant was incarcerated in Indiana at the time of the investigation into Blackford's death, and as an acquaintance of Blackford, he was interviewed by investigators several times. Evidence at trial established that on December 19, 2012, approximately nine months prior to Blackford's remains being found, the defendant and Blackford had purchased pseudoephedrine from two different pharmacies. The defendant's cellular telephone also contained photographs of Blackford taken on that date. During the interviews, the defendant informed investigators that this was the last time he had seen Blackford. He stated that on that evening, he and Blackford went to the defendant's trailer, and he went to sleep. When he woke up, Blackford and the defendant's

2

wallet were missing. Investigator Andrew Good testified that the defendant had explained during one of his interviews that after Blackford went missing, the defendant sent texts to various people pretending to be Blackford. The defendant stated that he did this in order to find Blackford and his wallet.

¶ 7    At trial, the State's exhibit V1 was admitted into evidence and included three video clips. One of the clips, titled 13-23, contained video and audio footage of detectives interviewing the defendant on September 3, 2013. In that clip, which the State played for the jury, the following exchange occurred:

"[Investigator 1]: 'Cause the thing we know, Kevin. Here's the thing we know. She did not put herself there herself. Somebody put her there.

[Defendant]: Right. That's what. I'm trying. I'm. Right.

[Investigator 1]: K.

[Defendant]: Right.

[Investigator 2]: Like you said, you know that river like the back of your hand.

[Defendant]: Yeah. Fisher to Mahomet.

[Investigator 2]: Don't you know what I mean, though? I mean, when people look at this from the outside they're like, well, he knows this river, this is his property, that's where he's gonna dump her.

[Defendant]: Wow. Wow. Man. I'm thinking if somebody murdered her they wouldn't just dump her where somebody could find her so she probably, my guess.

[Investigator 2]: That she [overdosed]?

3

[Defendant]: That's what I would guess. I mean, who would just murder somebody and leave a body to lay to where somebody could find it?

[Investigator 1]: Like I said, it was cold, it was windy, it was snowing, she has no reason to wander down to the river. Now, k, so she didn't go down there and [overdose]. So if she [overdosed], where'd she [overdose] at, and why would she be taken there?"

¶ 8    On cross-examination, Investigator Good was asked regarding the interview, "You told him on September 3rd of 2013 that Miss Blackford's remains were found right by his house?" Investigator Good responded, "Either by his house or by his property I can't remember which I said." Later, when the defendant testified, he was asked, "And why were you talking about this case so much, Kevin?" The defendant responded, "It was very troubling to me, the fact that they initially told me that they found a body in my back yard at the trailer I was renting."

¶ 9    The State also called Shane Halsema as a witness. Halsema testified that in October 2013 he was housed in the same Indiana correctional facility as the defendant. While they were both staying in the intake dormitory, the defendant told Halsema that the defendant had messed up and done something he should not have. The defendant began the explanation by stating that he "wished the bitch didn't do what she did." He then told Halsema that he had a "call girl" over at his house and she tried to take some money, things led to other things, and the defendant ended up throwing the girl in the river. The defendant told Halsema that the location where he threw the girl in the river was close to the defendant's mother's or grandmother's home, and the defendant could drive back to that area of the river from his home. Halsema believed that it was cold outside at the time of the incident, because he recalled the defendant saying that he had been in a shop or home with a wood-burning stove. The next day, the defendant approached Halsema and asked him not

4

to ever mention the conversation to anybody. On October 25, 2013, Halsema informed investigators about the conversation in an attempt to secure leniency in his own case, but he had not actually received any benefit or been promised anything in exchange for either that report or for his testimony at trial.

¶ 10    The defendant testified that while incarcerated in Indiana, there were payphones that the defendant used to call his parents in the intake dormitory where he stayed with Halsema. The defendant acknowledged that there was no way for Halsema to know that the defendant had been staying near his parents at the time of the incident, or that there was a river nearby, except for learning that information from the defendant. The defendant stated that he did not recall telling investigators that he was heating his home with a stove, but acknowledged that on the last night that he was with Blackford, he had been heating the home by turning the stove burners on. He agreed that Halsema would only have been able to know about the stove if the defendant had told Halsema that information, but the defendant clarified that the stove was not wood burning. He further agreed that if Halsema had stated that the defendant was mad about Blackford taking money, Halsema would have had to learn that from the defendant. He did not recall any reason why Halsema would have been upset with him. The defendant also testified that during his interview with investigators, they told him Blackford was found right by the defendant's house. When he later found out that Blackford was found by the river, it bothered the defendant that investigators had lied to him.

¶ 11    During closing argument, the State noted that there was no way for Halsema to possess the details he had unless the defendant had told Halsema those details. The State specifically referred to the fact that Halsema knew that Blackford's remains were located near the defendant's trailer, near his parents' home and near the river, and that the defendant was heating the trailer with a

5

stove. The State emphasized that the defendant had not told Halsema that the defendant had received the information regarding the murder from investigators rather than from personal knowledge. Noting that the conversation with Halsema began with the defendant wishing Blackford did not do what she did, and stating that the defendant knew that he had screwed up, the State highlighted that the defendant was telling Halsema what the defendant had done, not what investigators said he had done. The State also noted that the defendant approached Halsema the next day and asked him not to repeat the conversation to anyone, arguing that this was further indication that the defendant was not simply repeating what the investigators had told him.

¶ 12 Regarding Halsema, the defense noted in closing argument that Halsema had reported the defendant's statements to law enforcement in an attempt to secure a benefit for himself, implying that Halsema had a motive to relay the conversation as a confession when it was really just a discussion of what investigators had told the defendant. The defense also highlighted the discrepancy between a shop with a wood-burning stove, as Halsema reported as the location of the incident, versus a trailer with a cooking stove.

¶ 13 The jury returned guilty verdicts on all three counts. After the jury was excused, the trial court entered judgment against the defendant on all three counts but stated that the counts would merge for the purpose of sentencing. A presentence investigation report was ordered, and the case was set for a sentencing hearing on June 15, 2016. On May 24, 2016, the defendant's counsel filed a motion for acquittal, or in the alternative, motion for a new trial. On June 14, 2016, the defendant's counsel appeared before the trial court requesting an emergency continuance of the sentencing hearing to investigate a possible issue regarding a witness's testimony at trial. The trial court granted the motion over the State's objection. On June 16, 2016, the defendant's counsel filed an amended motion for acquittal, or in the alternative, motion for a new trial.

6

¶ 14     On July 15, 2016, the trial court conducted a hearing on the defendant's amended motion for acquittal, or in the alternative, motion for a new trial. After hearing testimony from the defendant's three witnesses, the State's sole witness, and arguments from counsel, the trial court denied the amended motion. The sentencing hearing was held on July 27, 2016, and the defendant was sentenced to a 60-year term of incarceration in the Illinois Department of Corrections with a three-year term of MSR. On direct appeal, the defendant raised five issues, and this court affirmed the conviction and sentence in *People v. Kelley*, 2019 IL App (4th) 160598. The defendant's petition for leave to appeal to the Illinois Supreme Court was denied on May 22, 2019, and *certiorari* was denied by the United States Supreme Court on November 18, 2019. *People v. Kelley*, 2019 IL App (4th) 160598, *appeal denied*, No. 124590 (May 22, 2019), *Kelley v. Illinois*, 140 S. Ct. 539 (2019).

¶ 15     On July 27, 2020, the defendant filed a *pro se* postconviction petition pursuant to the Act (725 ILCS 5/122-1 *et seq.* (West 2018)) alleging multiple constitutional violations. Relevant to this appeal, the defendant claimed trial counsel failed to call the defendant's mother, Stephanie Harris, to testify regarding information that she had provided to the defendant during telephone calls while he was in jail in Indiana; specifically, information regarding where Blackford was found. The defendant argued that this information tended to rebut the State's argument that the defendant would only have known where Blackford was found if he had killed her. The defendant further argued that trial counsel failed to investigate these telephone calls the defendant had with his mother, even though the defendant informed trial counsel that he learned where Blackford was found during the calls.

¶ 16     On August 6, 2020, the trial court entered an order stating:

7

"The Defendant has filed a Petition for Post-Conviction Relief on July 27, 2020[.] In his petition, he claims that the State failed to prove him guilty beyond a reasonable doubt. Since the State was unable to establish the cause of death through their expert witnesses then he couldn't be found guilty. He also claims that the propensity evidence wasn't sufficient to prove him guilty beyond a reasonable doubt.

The Defendant can not use post-conviction relief as a means to relitigate his guilt. *People vs Vail.* 46 ILL2 589[.]

The Petition is frivolous, patently without merit and is ordered dismissed[.]"

¶ 17 The defendant timely appealed. On appeal, the defendant argued that the trial court erred in dismissing his petition as frivolous regarding two of his allegations. Those claims involved the alleged ineffectiveness of trial counsel for failing to call the defendant's mother, Harris, and a jailhouse teacher who could have rebutted evidence provided by another jailhouse informant, to testify at trial. This court noted that the defendant had attached affidavits from Harris and the teacher, as well as telephone records showing the defendant's collect calls made to Harris. The State conceded the defendant's two claims, and this court found that the claims met the lenient standard to withstand first-stage dismissal. Accordingly, we remanded the matter for second-stage proceedings. *People v. Kelley*, No. 4-20-0408 (2022) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 18 Postconviction counsel was appointed for the defendant on December 9, 2022. On March 13, 2023, postconviction counsel filed a supplemental petition for postconviction relief and a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). The supplemental petition re-alleged the allegations of the original *pro se* postconviction petition and added

8

additional claims for ineffective assistance of both trial counsel and appellate counsel on direct appeal.

¶ 19 On April 24, 2023, the State filed a motion to dismiss the petition and the supplemental petition. Regarding the defendant's claim that his mother's testimony would have explained his knowledge of the location of Blackford's remains, the State argued that the testimony would have been superfluous where the jury was aware that detectives had told the defendant the location of Blackford's remains a month prior to the calls with his mother, and where her anticipated testimony did not refute the defendant's confession to Halsema. The State also argued that Harris's testimony could only help the State's case because a jury could infer that the defendant's spontaneous confession to Halsema, made well after the alleged incident, was prompted by panic after speaking to his mother.

¶ 20 A hearing on the motion to dismiss the petitions occurred on August 24, 2023. Defense counsel argued that, regarding Harris, the defendant's telephone calls with Harris could explain how Halsema learned of the location of Blackford's remains because Halsema could have overheard the defendant speaking with Harris when she told him Blackford was found by the river. Defense counsel believed that Harris's testimony would have given context as to why the defendant was discussing Blackford's remains being by the river and why Halsema would have known that information. The trial court asked defense counsel if it was true that the detectives who interviewed the defendant gave him that same information. The defendant stated, "No, sir," and defense counsel responded that "one of the investigators did say something to that effect. Yes, that is true."

¶ 21 By written order entered September 22, 2023, the trial court granted the State's motion to dismiss all but one of the defendant's postconviction claims. The trial court dismissed the claim

9

regarding Harris because investigators had informed the defendant of the location of Blackford's remains prior to the defendant's telephone call with Harris. Because of this, Harris's testimony would not have added anything to the trial. Only the claim involving the jailhouse teacher survived the motion to dismiss and was set for an evidentiary hearing.

¶ 22 The evidentiary hearing occurred on November 30, 2023, and the trial court heard evidence on the defendant's claim regarding the jailhouse teacher. The trial court found that trial counsel's representation of the defendant was not deficient on that issue. The sole surviving claim from the defendant's initial postconviction petition and supplemental petition was therefore denied. The defendant timely appealed.

¶ 23                                                  II. ANALYSIS

¶ 24 On appeal, the defendant raises the sole issue of whether the trial court erred in its second-stage dismissal of the defendant's claim regarding Harris. The defendant argues that the trial court should not have dismissed his postconviction claim that trial counsel was ineffective for failing to contact Harris regarding her telephone calls with the defendant while he was in jail, and for failing to call Harris as a witness at trial to explain how the defendant knew where Blackford's remains were located. He argues that his supplemental petition made a substantial showing that trial counsel provided ineffective assistance by failing to take these steps, and the trial court should have conducted an evidentiary hearing regarding this issue.

¶ 25 The Act provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated in his or her original trial or sentencing hearing. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). A postconviction proceeding is not an appeal from an underlying judgment, but rather is a collateral attack on the judgment. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009). As a collateral proceeding, a postconviction proceeding allows inquiry only into

10

constitutional issues that were not and could not have been adjudicated in an appeal of the underlying judgment. *Id.* "If a claim of ineffective assistance of counsel is based on matters outside the record, then it could not have been raised on appeal and, consequently, is not waived in a post-conviction petition." *People v. Smith*, 326 Ill. App. 3d 831, 839 (2001). Ineffective assistance claims based on what counsel should have done, not on what counsel did, may depend on proof "which could not have been included in the record precisely because of the allegedly deficient representation." (Internal quotation marks omitted.) *People v. Tate*, 2012 IL 112214, ¶ 14. Because the defendant's appeal is based on an allegation of what trial counsel should have done, rather than what trial counsel did, the defendant's claim of ineffective assistance is not waived for failure to include the issue on direct appeal.

¶ 26    At the second stage of a postconviction proceeding, a defendant is required to demonstrate a "substantial showing of a constitutional violation." *People v. Bailey*, 2017 IL 121450, ¶ 18. A substantial showing is a measure of the legal sufficiency of the petition's allegations, which, if proven at an evidentiary hearing, would entitle the defendant to relief. *People v. Domagala*, 2013 IL 113688, ¶ 35. During second-stage proceedings, the trial court is "foreclosed from engaging in any fact-finding because all well-pleaded facts not rebutted by the record are to be taken as true." *People v. Phyfiher*, 361 Ill. App. 3d 881, 884 (2005). The State can move to dismiss the petition at the second stage. 725 ILCS 5/122-5 (West 2018). If the defendant makes a substantial showing of a constitutional violation at the second stage, the petition advances to the third stage where the trial court conducts an evidentiary hearing. *Id.* § 122-6; *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 27    In this matter, the trial court dismissed the appealed issue at the second stage. The standard of review for second stage dismissal of a postconviction issue is *de novo*. *People v. Velasco*, 2018

11

IL App (1st) 161683, ¶ 91. On *de novo* review, the reviewing court makes its own independent assessment of whether the allegations of the petition and supporting documentation, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 28    The defendant's sole issue on appeal is that trial counsel was deficient for failure to call Harris as a witness. The State argued at trial that Halsema knew that Blackford's remains were located near a river when he reported the defendant's statement, and Halsema could only have received that information from the defendant. The defendant claims that if Harris had been called to explain that she told the defendant the location of Blackford's remains during a telephone call in October, that would explain to the jury how he had been able to communicate that information to Halsema. By explaining that he had a source other than his own personal knowledge for the information regarding the location of Blackford's remains, the defendant essentially argues that he could have rebutted the testimony of Halsema and the implication that the defendant possessed that information to provide to Halsema because he committed the murder. Thus, the defendant claims his counsel was ineffective for failing to call Harris to provide that explanation.

¶ 29    A criminal defendant has a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 688 (1984). *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (Illinois Supreme Court adopting the *Strickland* standard). To prevail, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and counsel's errors resulted in prejudice to the defendant. *People v. Bailey*, 2020 IL App (5th) 160458, ¶ 86. "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that

12

there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Cathey*, 2012 IL 111746, ¶ 23 (quoting *Strickland*, 466 U.S. at 694). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v. Erickson*, 183 Ill. 2d 213, 224 (1998) (quoting *Strickland*, 466 U.S. at 694). To be successful on a claim for ineffective assistance of counsel, the defendant must satisfy both prongs. *Id.* at 697. However, while a defendant must satisfy both prongs to be successful in an ineffective assistance claim, we may dispose of such a claim by examining the prejudice prong alone. *Albanese*, 104 Ill. 2d at 527.

¶ 30    When evidence is cumulative, a failure to present it generally cannot support a claim of ineffective assistance of counsel, because there is no reasonable probability that the evidence's admission would have changed the outcome of the proceedings. See *People v. Simms*, 168 Ill. 2d 176, 194 (1995); *People v. Brooks*, 251 Ill. App. 3d 927, 934 (1993). "Evidence is considered cumulative when it adds nothing to what was already before the jury." *Ortiz*, 235 Ill. 2d at 335.

¶ 31    In this case, the proposed testimony of Harris would have added nothing to what was already before the jury. Investigators had informed the defendant that Blackford was found near the river during the September 3, 2013, interview. In the video clip of that interview, investigators first stated to the defendant, "She did not put herself there herself. Somebody put her there." They then stated, "You know that river like the back of your hand." They hypothetically posited that the defendant "knows this river, this is his property, that's where he's gonna dump her," and asked him, "She has no reason to wander down to the river. Now *** if she [overdosed], where'd she [overdose] at, and why would she be taken there?" That video clip was played for the jury.

¶ 32    It is clear from the video that the defendant was informed of the location of Blackford's remains by investigators in September 2013. The jury was further aware that the defendant's

13

conversation with Halsema occurred in October 2013 well after he had spoken to investigators. Additionally, the State's argument to the jury that the defendant spoke to Halsema from personal experience did not hinge on his knowledge of Blackford's location; the State's emphasis was on Halsema's testimony that the information was relayed *as the defendant's own personal experience*, and that the defendant later asked Halsema to keep the information secret, which the State argued indicated that the defendant had committed the murder and then later realized that he should not have told Halsema about it.

¶ 33    Conclusive evidence that the defendant had an alternate source, other than his personal knowledge, for Blackford's location by the time he spoke to Halsema was provided to the jury via the interview video. The State noted that the defendant had this conversation with investigators prior to speaking to Halsema in its closing argument. As such, for the purpose of showing that the defendant received information regarding Blackford's location from another person, his mother, prior to telling Halsema about it, the proposed testimony would have added nothing to what was already before the jury and would therefore be cumulative of the interview video.

¶ 34    Because the evidence was cumulative, defense counsel's failure to present it does not support the defendant's claim of ineffective assistance of counsel because the defendant has failed to demonstrate prejudice where there is no reasonable probability that the result of the proceeding would have been different. Accordingly, we affirm the trial court's dismissal of the defendant's ineffective assistance claim regarding Harris and the denial of the initial and supplemental postconviction petitions.

¶ 35                                    III. CONCLUSION

¶ 36    Based on the foregoing, we affirm the trial court's second-stage dismissal of the defendant's postconviction claim where trial counsel did not render ineffective assistance for failure to call a witness where the proposed testimony would have been cumulative.

¶ 37    Affirmed.